The STATE of Ohio, Appellee,

v.

BUSHEY, Appellant.

[Cite as *State v. Bushey* (1994), 98 Ohio App.3d 832.]

Court of Appeals of Ohio,
Butler County.

No. CA92–04–072.

Decided Nov. 28, 1994.

*Gary L. Sheets,* Hamilton City Law Director, and *Samuel D. Borst,* Assistant Law Director, for appellee.

*David J. Scacchetti,* for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Joseph P. Bushey, appeals his conviction in the Hamilton Municipal Court for driving while under the influence of alcohol in violation of the Codified Ordinances of the city of Hamilton, Ohio, and R.C. 4511.19.

On August 3, 1991, at 12:30 a.m., officers Mark Christian and John H. Nethers of the Hamilton City Police Department were both standing outside a Dairy Mart at the corner of Fairgrove Avenue and Campbell Avenue in Hamilton, Ohio, when Officer Christian observed appellant enter the Dairy Mart parking lot by "shorten[ing]/cut[ting] off the corner." Both officers noticed that appellant was driving faster than they thought one should in a parking lot. Appellant's vehicle pulled up in front of the Dairy Mart and came to an abrupt stop.

After observing actions leading him to believe appellant was under the influence of alcohol and finding a sixteen-ounce open beer can on the seat between appellant's legs, Officer Nethers asked appellant to step out of his vehicle and perform a field sobriety test. Appellant refused, stating that he was not going to take any test. Officer Nethers placed appellant under arrest, put him in his cruiser and took him to the police station. At trial, officer Nethers testified that appellant was verbally abusive and uncooperative at the scene and that he was using profanity.

At the police station, Officer Nethers began the booking procedure. Although Nethers had appellant's driver's license (which appellant had handed to him at the scene), Nethers asked appellant about his home address, phone number, place of birth, marital status and employment to verify that the information on the driver's license was correct. Each time, appellant gave Nethers facetious answers which Nethers wrote as "refused" on the arrest report.[1] Later on, officer

---

1. Appellant's answer "in a galaxy far far away" to Officer Nethers' question about appellant's place of birth is an example of a facetious answer. It is also the only facetious answer Nethers wrote down on the arrest report.

Nethers read appellant the implied consent form and asked him if he would take the test. Appellant refused, stating that he was not taking any test. He also refused to sign the implied consent form and the property receipt for the beer can seized in his vehicle. Following appellant's refusal, officer Nethers placed him in the holding cell. Both officers testified at trial that appellant was "mouthy" and belligerent at the police station and that he made threats to both.

On August 3, 1991, appellant was charged with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). On October 11, 1991, appellant filed a motion to suppress based in part upon a lack of probable cause to stop appellant and a violation of appellant's constitutional right to counsel. A hearing on the motion to suppress was held on January 14, 1992. The trial court *sua sponte* determined that certain issues, including the issue of appellant's refusal to submit to chemical testing, would be treated as if addressed in a motion *in limine*. Both parties filed their respective memorandum in support of or in opposition to appellant's motion *in limine*. On February 25, 1992, the trial court overruled appellant's motion to suppress/motion *in limine*. A one-day jury trial ensued on March 2, 1992. At the close of the city of Hamilton's case, appellant moved for dismissal under Crim.R. 29. This motion was denied. The jury later returned a verdict of guilty as charged, and judgment was entered on March 2, 1992.

Appellant filed this appeal and raises the following assignment of error:

"The trial court erred to the prejudice of the defendant in admitting evidence that the defendant did not submit to a chemical sobriety test when, in fact, defendant's delay was a good faith exercise of his right to consult with counsel which occurred well within the two hour limit for administration of such tests."

■ Appellant claims that on more than one occasion, he requested to make a phone call to his brother-in-law, who was an attorney in Minneapolis,[2] for advice, a request which was repeatedly denied by the police officers. Appellant argues that his refusal to answer any questions or to take any tests was conditioned only upon a request to exercise the statutory right to counsel pursuant to R.C. 2935.20, and that, as such, it did not constitute a refusal within the meaning of R.C. 4511.191. Appellant further argues that it was error for the trial court to allow appellee during the trial to introduce and rely on appellant's refusal to submit to any tests, to prove appellant's alcohol-related physical impairment.

R.C. 2935.20 confers the right to counsel after arrest and states in part:

---

2. At the time of his arrest, appellant, a resident of Minneapolis, Minnesota, was temporarily on business pursuits in Hamilton, Ohio.

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel."

A good faith request to exercise one's statutory right to consult with counsel before submitting to a chemical test required by the implied consent statute does not constitute a refusal to take such test, as long as the delay which occurs as a result of exercising the right will not unduly or unreasonably delay the administration of the test. *Siegwald v. Curry* (1974), 40 Ohio App.2d 313, 69 O.O.2d 293, 319 N.E.2d 381. However, if a request to consult with an attorney is made as a fraud or subterfuge to avoid taking a blood-alcohol-content ("BAC") test, or as an attempt to delay matters beyond the statutory two hours for taking the test, there is a refusal within the contemplation of R.C. 4511.191. *Siegwald; Raine v. Curry* (1975), 45 Ohio App.2d 155, 74 O.O.2d 171, 341 N.E.2d 606.

The determination of whether one's refusal to submit to a test is a refusal within the contemplation of R.C. 4511.191 or a good faith request to exercise one's statutory right is a factual determination to be made by the trial court based upon the facts and circumstances of the case. See *Siegwald, supra.* A refusal to take the chemical test may be admissible into evidence to show that the arrested person was intoxicated at the time of his refusal. See *Westerville v. Cunningham* (1968), 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40.

The testimony of the witnesses as to when and if appellant requested to consult with counsel or his brother-in-law conflicts. On direct examination, appellant testified that as soon as Officer Nethers started asking him questions at the police station, appellant replied that he would not answer any questions until he had the right to speak to an attorney. Appellant testified that he requested to speak to an attorney approximately eight or nine times. With regard to his brother-in-law, appellant testified as follows: "And uh, then he asked me will you take a breath test. I refuse to answer any questions, until I have a right to speak to an attorney. He said, I suppose your attorney is in Minnesota? I said yes, he's my brother-in-law."

On cross-examination, appellant testified that the police officers did not ask him to perform any field sobriety test. He further testified that his refusal to answer any questions on the basis of his desire to consult with an attorney began at the scene. He admitted, however, that he did not state that his attorney was his brother-in-law until they were at the police station. He also testified that his brother-in-law was not licensed to practice in Ohio.

With regard to appellant's request to make a phone call, Officer Christian first testified as follows:

"Q. [by David Scacchetti, counsel for appellant] * * * Was there a request for phone call?

"A. I do not recall at the scene.

"Q. Was there a request for a phone call at some point?

"A. Not that I'm aware of. There was a statement made in the booking room, later.

"Q. What was that?

"A. When am I going to be able to use a telephone?

"Q. What did you tell him?

"A. I said as soon [sic] everything gets done, you will be able to usea [sic] telephone. That was the only thing I said to him, in the booking room."

Officer Christian later testified as follows:

"Q. [by David Scacchetti, counsel for appellant] Officer do you recall him mentioning something about his brother-in-law being an attorney?

"A. Yes.

"Q. And do you also recall the fact that he said he wanted to talk to an attorney?

"A. I do not remember that.

"Q. Did he say he wanted to talk to his brother-in-law.

"A. Not at the scene, I don't know.

"Q. At any point?

"A. Not that I can recall.

"Q. I just thought that you said that he stated that he wanted to talk to his brother-in-law?

"A. Are we speaking at the scene?

"Q. At any point?

"A. He said he wanted to make a telephone call, when I saw him in the booking room.

"Q. Did he state that he wanted to talk to his brother-in-law?

"A. I do not recall who he asked for, just that he wanted to make a telephone call."

Officer Christian testified on redirect examination that appellant requested to use the phone after he had refused to submit to the chemical test. Christian

explained that he knew about the time frame because he did not arrive at the police station until after the BAC test had been refused.

Officer Nethers did not recall appellant mentioning a lawyer at the scene. He testified, however, that he heard appellant mention his brother-in-law several times at the police station, but not at the scene. Nethers testified that he did not learn that appellant's brother-in-law was an attorney until appellant so testified at the hearing for the motion to suppress. Nethers's testimony as to when appellant asked to call his brother-in-law was as follows:

"*A.* I do recall Mr. Bushey wanting to call his brother-in-law. I was never aware that his brother-in-law was an attorney. But he did ask to call his bortherin-law [*sic* ]. I don't recall what point during the booking process. I don't know for sure if it was before or after I read him the complied [*sic* ] consent to the Datamaster test. At one point and time, I did tell him that [if] his brother-in-law was in Minnesota, it would be a long distance call. He would either have to use a calling card or something of that effect, because he can't make long distance phone calls out of the prisoner phone in our booking room. I believe he said forget it or words to that effect. And he never did use the phone."

Officer Nethers finally testified that he never heard appellant request an attorney.

A thorough review of the record indicates that, although there was some evidence that appellant requested to make a phone call, the facts are conflicting as to whether appellant refused to take the test when first asked by Officer Nethers to do so, and then requested a communication with his brother-in-law/attorney, or whether he conditioned his taking the test upon first talking to his brother-in-law. The record clearly indicates, however, that from the time the police officers approached appellant at the scene, appellant was belligerent, uncooperative and verbally abusive, and that he refused to identify himself at the police station.

It is our view that, under the facts and circumstances of the case at bar, the trial court could have reasonably construed the evidence to the effect that appellant's refusal to take the chemical test was not a refusal based upon the statutory right to communicate with counsel or his brother-in-law, but was an outright refusal to take the test, and that such refusal had been expressed at the outset. We therefore hold that appellant's refusal to take the chemical test was admissible evidence at trial to prove his physical impairment at the time of his refusal. Appellant's sole assignment of error is overruled.

*Judgment affirmed.*

KOEHLER and WILLIAM W. YOUNG, JJ., concur.